IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TIMOTHY WILSON and ROBERT PASTORE, | ) ) | |
| | ) | Civil Action No. 16-1443 |
| Plaintiffs, | ) | Chief Magistrate Judge Maureen P. Kelly |
| | ) | |
| v. | ) | |
| | ) | |
| PORT VIEW BOROUGH and BRYAN MYERS, | ) ) | Re: ECF No. 3 |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

**KELLY, Chief Magistrate Judge**

Plaintiffs Timothy Wilson and Robert Pastore ("Plaintiffs"), who were formerly

employed in the Streets Department of Port Vue Borough in Allegheny County, Pennsylvania,

have brought this civil rights action against Defendants Port View Borough ("the Borough") and

Bryan Myers ("Myers") (collectively, "Defendants"), after Meyers allegedly had Plaintiffs

falsely arrested for selling scrap metal ("scrap") belonging to the Borough.

Presently before the Court is a Motion to Dismiss filed on behalf of Defendants. ECF

No. 3. For the reasons that follow, the Motion to Dismiss will be granted.

## I.    FACTUAL AND PROCEDURAL BACKGROUND

According to the Complaint, the Borough has an ordinance which considers trash placed

curbside to be the property of the hauler. ECF No. 1-3 ¶ 5. Plaintiffs allege that when they

began their employment with the Borough, it was "common practice" to take scrap placed

curbside by residents and to use the proceeds for a "coffee fund" or to buy "basic supplies for

Plaintiffs' workplace." Id.

It appears that sometime in 2013, Defendant Myers, the Borough's Chief of Police, discovered discrepancies between the receipts for scrap turned into the Borough and those turned in by the scrapyard and subsequently instructed Plaintiffs in February of 2014 that the money and receipts obtained from scrap should be turned in to the Borough Manager. Id. ¶ 7. Plaintiffs, according to the Complaint, consequently stopped keeping money for the purported coffee fund. Id.

Plaintiffs allege, however, that in April 2014, a member of Borough Council gave Plaintiffs items for scrap and specifically instructed them to keep the money for the coffee fund and that, in late June, another Council member told Plaintiffs to scrap brake rotors and a stair lift. Id. ¶¶ 8, 9. Nevertheless, following an investigation into complaints that someone was rummaging through Borough residents' garbage for scrap metal, Myers, it is alleged, accused Plaintiffs of theft, and on July 2, 2014, had Plaintiffs arrested by the Borough police and brought before the local magistrate. Id. ¶¶ 10, 11. Plaintiffs allege that they were placed on administrative leave from their positions with the Borough on that same date, and were allegedly fired because of the arrest on July 15, 2014. Id. ¶ 12. Plaintiff alleges that the County withdrew the charges brought against them in October, 2014. Id. ¶ 14.[1]

Plaintiff commenced this action on June 30, 2016, by filing a praecipe for writ of summons in the Court of Common Pleas of Allegheny County, Pennsylvania. ECF No. 1. The Complaint was subsequently filed on August 22, 2016, wherein Plaintiff has brought claims against Defendants for false arrest and malicious prosecution under 42 U.S.C. § 1983 (Count I), and on September 19, 2016, Defendants removed the action to this Court. Id. Defendants filed the instant Motion to Dismiss on September 26, 2016, to which Plaintiffs responded on October

_____
[1] Although Plaintiff alleges in the Complaint that the charges were withdrawn in October, 2015, the Docket sheet reflects that they were withdrawn, at least as to Plaintiff Wilson, on October 14, 2014. ECF No. 4-1 at 16, 17.

18, 2016.  ECF Nos. 3, 8.  Defendants filed a Reply brief on November 1, 2016, rendering the Motion ripe for review.

## II.      STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set forth in the complaint.  See California Pub. Empls.' Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  Id., citing Papasan v. Allain, 478 U.S. 265, 286 (1986).  Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  See Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

## III.    DISCUSSION

Plaintiffs have brought their claims pursuant to 42 U.S.C. § 1983 ("Section 1983"), which provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  "Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  It does not, by its own terms, create substantive rights."  Kaucher v. Cty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979) (footnote omitted).  Thus, in order to state a claim for relief under Section 1983, the plaintiff must allege facts from which it could be inferred that "the defendant, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States."  Id. at 423.  Although Plaintiffs make no mention of the Fourth Amendment in their Complaint, it is clear that their claims for false arrest and malicious prosecution are premised on violations of their rights provided by the Fourth Amendment.  See Groman v. Twp. of Manalapan, 47 F.3d 628, 636 (3d Cir. 1995); Kokinda v. Breiner, 557 F. Supp. 2d 581, 592 (M.D. Pa. 2008); Telepo v. Palmer Twp., 40 F. Supp. 2d 596, 609 (E.D. Pa. 1999), *aff'd*, 242 F.3d 371 (3d Cir. 2000).

### A.    False Arrest

Defendants argue that Plaintiffs' claims for false arrest should be dismissed because Plaintiffs have failed to allege that Myers, who was not the arresting officer in this matter, provided false information leading to Plaintiffs' arrests.

The law is not in dispute. "To state a claim for false arrest under the Fourth Amendment, a plaintiff must establish: (1) that there was an arrest; and (2) that the arrest was made without probable cause." James v. City of Wilkes–Barre, 700 F.3d 675, 680 (3d Cir. 2012). Thus, "[t]he proper inquiry in a section 1983 claim based on false arrest is 'whether the arresting officer had probable cause to believe the person committed the offense.' If probable cause existed, plaintiffs cannot state an actionable claim for false arrest or under § 1983." Gutherman v. Northeast Women's Ctr., Inc., 1989 WL 66423, at *2 (E.D. Pa. June 16, 1989), *quoting* Dowling v. City of Phila., 855 F.2d 136, 141 (3d Cir. 1988). See Commonwealth v. Thompson, 604 Pa. 198, 203, 985 A.2d 928, 931 (2009) (probable cause will be found where "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime"). See also Curcio v. Schwartz, 2013 WL 265801, at *3 (W.D. Pa. Jan. 22, 2013). Moreover, the fact that the criminal charges were subsequently dismissed is irrelevant to the determination of whether probable cause existed in the first instance. Michigan v. DeFillippo, 443 U.S. 31, 36 (1979). See Shurney v. Scott's Econo Inn, Inc., 2006 WL 1766813, at *5 (W.D. Pa. June 23, 2006) ("the fact that the charges were dismissed at the preliminary hearing stage does not thereby negate the existence of probable cause to support Plaintiff's initial arrest and detention"); Vassallo v. Timoney, 2001 WL 1243517, at *7 (E.D. Pa. Oct. 15, 2001), *aff'd*, 40 F. App'x 734 (3d Cir. 2002), *quoting* Michigan v. DeFillippo, 443 U.S. at 36 ("[t]he validity of the arrest does not depend on whether the suspect actually committed the crime" and his "later acquitt[al] of the offense for which he is arrested is irrelevant to the validity of the arrest").

Further, "[p]olice officers acting pursuant to a facially valid warrant generally are deemed to have probable cause to arrest." Garcia v. Cty. of Bucks, 155 F. Supp. 2d 259, 265 (E.D. Pa. 2001)(citations omitted). See Fiore v. City of Bethlehem, 510 F. App'x 215, 220 (3d Cir. 2013) ("the fact that a [judge] has issued a warrant is the clearest indication that the officers acted in an objectively reasonable manner . . . ."). Under such circumstances, a Section 1983 false arrest claim cannot be sustained absent a showing that the officer "knowingly and deliberately, or with a reckless disregard for the truth, made false statements or omissions that create a falsehood in applying for a warrant" and that "such statements or omissions are material, or necessary, to the finding of probable cause." Wilson v. Russo, 212 F.3d 781, 786–87 (3d Cir. 2000). See Goodwin v. Conway, 2016 WL 4728004, at *4 (3d Cir. Sept. 12, 2016) ("[o]missions and misrepresentations are 'material' if a reconstructed warrant application containing the alleged omissions and excising the alleged inaccuracies would no longer establish probable cause").

Similarly, where, as here, the named defendant is not the officer who personally arrested or detained the plaintiff, the plaintiff must show that the defendant knowingly provided false, material information leading to the plaintiff's arrest and detention. O'Hara v. Hanley, 2009 WL 2043490, at *6-7 (W.D. Pa. July 8, 2009). See Berg v. Cty. of Allegheny, 219 F.3d 261, 271–72 (3d Cir. 2000) ("§ 1983 liability can extend beyond the arresting officer to other officials whose intentional actions set the arresting officer in motion"); Telepo v. Palmer Twp., 40 F. Supp. 2d 596, 610 (E.D. Pa. 1999), aff'd, 242 F.3d 371 (3d Cir. 2000) ("[a] person can be liable for malicious prosecution if he fail[s] to disclose exculpatory evidence to prosecutors, make[s] false or misleading reports to the prosecutor, omit[s] material information from the reports, or

otherwise interfere[s] with the prosecutor's ability to exercise independent judgment in deciding whether to prosecute").

In the instant case, it is clear from the documents pertaining to the criminal proceedings initiated against Plaintiffs, which Defendants have attached to their Motion to Dismiss, that neither Myers nor anyone from the Borough's Police Department effectuated Plaintiffs' arrests but that they, in fact, were arrested by the Allegheny County Police. ECF Nos. 4-1, 4-2.[2] Thus, in order to state a false arrest claim against Myers, Plaintiffs are obligated to allege facts from which it could be inferred that their arrests were based on false and material information provided by Myer. Plaintiffs, however, have pled no such facts. Not only have they failed to expressly allege that Myers provided "false information" but they have not specifically identified what that information may have been or to whom it was provided. Indeed, Plaintiffs' false arrest claim is based on nothing more than the conclusory statement that Plaintiffs were "wrongly arrested at the direction of Chief Myers." ECF No. 1-3 ¶ 11.

Although Plaintiffs have argued in their Responsive Brief, albeit in context of Plaintiffs' malicious prosecution claim and not that of false arrest, that they have pled "they were legally entitled to take the material" at issue, ECF No. 9 at 3, thereby insinuating that any information provided by Myers relative to the two incidents where council member allegedly approved Plaintiffs' scrapping was false, review of the Complaint shows that Plaintiffs have merely

---

[2] In deciding a motion to dismiss, "[i]n addition to the allegations contained in the pleadings, the Court may also review "matters of public record, exhibits attached to the complaint and items appearing in the record of the case," as well as "undisputably authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Ickes v. Flanagan, 2008 WL 859183, at *1 (W.D. Pa. Mar. 31, 2008), *quoting* Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994), and Steinhardt Group Inc. v. Citicorp, 126 F.3d 144, 145 (3d Cir. 1997). Otherwise, a plaintiff with a legally deficient claim could survive a motion to dismiss simply by failing to attach a dispositive document on which it relied. See Goodwin v. Elkins & Co., 730 F.2d 99, 113 (3d Cir. 1984). Because the arrest warrants, criminal complaints and dockets submitted by Defendants in this case relative to Plaintiffs' criminal charges are a matter of public record and their authenticity has not been disputed, the Court may consider them without converting the Motion to Dismiss to one for summary judgment.

alleged that in April of 2014 and again in June of 2014, after Myers had instructed Plaintiffs that money and receipts from scrap were to be turned into the Borough Manager, some unidentified members of Borough Council gave Plaintiffs items to scrap and told them they could keep the money. ECF No. 1-3 ¶¶ 7-9. In light of Plaintiffs' apparent awareness that the Borough has an ordinance that the scrap belonged to the Borough and Myers' instructions to stop scrapping because of the ordinance, the council members alleged approval of Plaintiffs' scrapping does not evidence legal entitlement to the materials or that any information provided by Myers was false.

Moreover, even if one could construe as false the information Myers may have relayed to the Allegheny County Police regarding the two scrapping incidents that were allegedly "approved" by the council members, it is irrelevant as review of the record belies any assertion that Plaintiffs were otherwise arrested without probable cause. The record shows that after Myers initiated the investigation, the Allegheny County Police conducted their own investigation and learned that Plaintiffs had been told by Pamela Myers, the Port Vue Streets Chairperson, that the Borough ordinance providing that garbage placed curbside it is the property of the hauler and prohibits scrapping without a permit; that Plaintiffs nevertheless continued to scrap material on "multiple occasions" in 2013 and 2014, while in a Borough truck and on Borough time; that Plaintiffs failed to turn in receipts or cash for the majority of the scrap they retrieved; that an audit of 2013 showed that only one receipt, in the amount of $72.60, was turned into the Borough by Plaintiffs and that $5237.20 in receipts had not been turned in; and that an audit of 2014 revealed that only six receipts in the amount of $262.60 had been turned in by Plaintiffs and receipts in the amount of $1280.00 had not. ECF No. 4-1 at 5-8, 12-14. In addition, Plaintiffs admitted to the scrapping, that they did it on Borough time in a Borough truck and that they diverted the money they received for themselves as well as for the coffee fund. Id.

These facts, which Plaintiff do not assert are false and which the magistrate relied upon in issuing the arrest warrants, are clearly sufficient to warrant a person of reasonable caution in the belief that Plaintiffs committed the crimes charged and thus support the magistrate's finding of probable cause for Plaintiffs' arrests even without considering the two scrapping incidents allegedly approved by member of Borough Council or whether Myers instigated the investigation for some unknown reasons personal to him.[3]  See Basile v. Twp. of Smith, 752 F. Supp. 2d 643, 651 (W.D. Pa. 2010), citing Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994) ("as long as probable cause existed as to any single offense that could have been charged under the circumstances, an arrest is deemed to be supported by probable cause"). Under these circumstances, Plaintiff has failed to state a claim for false arrest and Defendants' Motion to Dismiss in this regard is properly granted.

## B.    Malicious Prosecution

In order to succeed on a claim for malicious prosecution pursuant to Section 1983, a plaintiff must establish that: (1) the defendants initiated a criminal proceeding; (2) the criminal proceeding ended in the plaintiff's favor; (3) the proceeding was initiated without probable cause; (4) the defendants acted maliciously or for a purpose other than bringing the plaintiff to justice; and (5) the plaintiff suffered a deprivation of liberty consistent with the concept of seizure as a consequence of a legal proceeding.  DiBella v. Borough of Beachwood, 407 F. 3d 599, 601 (3d Cir. 2005).

---

[3] The record shows that Plaintiffs were charged with theft by unlawful taking, which criminalizes the "unlawful[] tak[ing], or exercise[ing] unlawful control over, movable property of another with intent to deprive him thereof," and theft by failure to make required disposition of funds received, which is actionable where and "[a] person who obtains property upon agreement, or subject to a known legal obligation, to make specified payments or other disposition, whether from such property or its proceeds or from his own property to be reserved in equivalent amount, is guilty of theft if he intentionally deals with the property obtained as his own and fails to make the required payment or disposition."  18 Pa. C.S.A. §§ 3921, 3927, respectively.  ECF No. 4-1 at 5, 12.

In the instant case, Defendants argue that Plaintiffs' claim for malicious prosecution should be dismissed because Plaintiff has failed to plead sufficient facts to satisfy the fifth element or that Plaintiffs were seized within the meaning of the Fourth Amendment.

As argued by Defendants, the United States Court of Appeals for the Third Circuit has explained that, in the context of a malicious prosecution claim, a "seizure" requires that a criminal defendant is subject to either pretrial custody or "some onerous types of pretrial, non-custodial restrictions," such as restrictions on travel, as a consequence of a legal proceeding. DiBella v. Borough of Beachwood, 407 F. 3d at 603 (noting that a "seizure" has been found where plaintiffs were required to post bail and report to pre-trial services and were forbidden to travel out of state). See Johnson v. Knorr, 477 F.3d 75, 85 n.14 (3d Cir. 2007) (recognizing that a seizure occurred where the plaintiff was subject to a two-day detention at the police station until he was able to make bail); Shamberger v. Glover, 2012 WL 12517917, at *11 (D.N.J. 2012) (plaintiff's being detained overnight at the police station and required to post bail in the amount of $50,000 constituted a seizure in the context of a malicious prosecution claim). Cf. Benard v. Wash. Cty., 465 F. Supp. 2d 461, 469 (W.D. Pa. 2006) (no seizure occurred where plaintiff was arrested but released on her own recognizance, was required to notify authorities if she changed her address, and was required to attend court proceedings).

Plaintiffs in this case have not alleged any facts in the Complaint to suggest that they were subject to either pretrial custody or any onerous pretrial restrictions and thus have failed to state a claim for malicious prosecution.

Relying on Black v. Montgomery Cty., 835 F.3d 358 (3d Cir. 2016) ("Black"), Plaintiffs nevertheless argue that mere submission to an officer's show of authority is sufficient to satisfy the seizure requirement. Plaintiffs' reliance on Black, however, is misplaced as it does not stand

for the proposition that an arrest, standing alone, suffices to establish a continuing seizure for purposes of a malicious prosecution claim.

In Black, the United States Court of Appeals for the Third Circuit engaged in a lengthy discussion regarding the scope of the term "seizure" and the various scenarios under which a seizure will be found, focusing largely on Justice Ruth Bader Ginsburg's concurrence in Albright v. Oliver, 510 U.S. 226 (1994), in which she argued that Fourth Amendment protection continues even after release from official custody. Black, 835 F.3d at 366. The Black Court then went on to discuss, with approval, two cases in which it had previously applied Justice Ginsburg's "continuing seizure" theory: Gallo v. City of Phila., 161 F.3d 217 (3d Cir. 1998) ("Gallo"), and DiBella v. Borough of Beachwood, 407 F.3d at 599 ("DiBella"). In Gallo, the Court of Appeals for the Third Circuit found that the plaintiff had been seized post-indictment and in DiBella, it found that the plaintiff had not. The distinction between the two cases clearly rests on the nature of the pretrial restrictions, if any, that were imposed on the respective plaintiffs. In Gallo, the plaintiff was required to post $10,000 bond, attend court hearings including his arraignment and trial, contact Pretrial Services on a weekly basis and was prohibited from traveling outside of New Jersey and Pennsylvania. Black, 835 F.3d at 367, citing Gallo, 161 F.3d at 222. In contrast, as explained by the Court in Black, the plaintiff in DiBella only had a summons issued against him, never posted bail, was free to travel, and did not have to report to Pretrial Services. Id. Thus, the DiBella Court found that the "significant pretrial restrictions" imposed in Gallo were lacking and that DiBella's sole restriction of having to attend the municipal court trial did not amount to a seizure for Fourth Amendment purposes noting "that '[p]retrial custody and some onerous types of pretrial, non-custodial restrictions constitute a Fourth Amendment seizure.'" Id., citing DiBella, 407 F.3d at 603.

Applying these precedents to the facts before it, the Court in <u>Black</u> concluded that, like in <u>Gallo</u>, "Black's liberty was subject to constitutionally significant restraints by the defendants," such that she was seized for Fourth Amendment purposes. <u>Id.</u> at 367. Specifically, the Court pointed to the fact that Black had been interrogated by police; that she has to fly from her home in California to Pennsylvania for her arraignment; that she spent more than an hour being fingerprinted and photographed at a police station; that she was required to post unsecured bail of $50,000; that she was told that the bond would be forfeited if she did not attend all court proceedings; that, consequently, she was compelled her to travel across the United States to attend pre-trial hearings which required her to fly from California to Pennsylvania for twelve pre-trial conferences in just one year, presumably at great expense; and that the trial did not occur until April of 2014 -- sixteen months after she had been charged. <u>Id.</u> at 367-68.

In the case presently before this Court, unlike in <u>Black</u> or <u>Gallo</u>, the Complaint is completely devoid of any facts from which it can be inferred that Plaintiffs were subject to *any* pretrial restrictions. Indeed, similar to the facts in <u>DiBella</u>, the record shows that no bail was set and there were no intervening court appearances between Plaintiffs' arrests and the time the charges were withdrawn a little over three months later. ECF No. 4-1 at 16. <u>See Hanks v. Cty. of Delaware</u>, 518 F. Supp. 2d 642, 651 (E.D. Pa. 2007), *citing* <u>DiBella</u>, 407 F.3d at 603 (the mere attendance at a trial or a hearing does not qualify as a Fourth Amendment seizure). In addition, Plaintiffs did not have to travel in order to attend that proceeding.

Furthermore, as previously stated, to satisfy the seizure requirement of a malicious prosecution claim, the seizure must be a *consequence* of a legal proceeding which necessarily means *as the result of* or *following* a legal proceeding that has been initiated. The mere initiation of a legal proceeding therefore cannot by itself be a consequence of that same proceeding. <u>See</u>

Donahue v. Gavin, 280 F.3d 371, 381 (3d Cir. 2002), *quoting* Torres v. McLaughlin, 163 F.3d 169, 174 (3d Cir. 1998) ("the limits of Fourth Amendment protection relate to the boundary *between* arrest and pretrial detention") (emphasis added). Indeed, as stated by the United States District Court for the Middle District of Pennsylvania, in a case factually similar to this case:

> The legal proceedings were allegedly initiated by the defendants when they filed the police complaint, but the plaintiff's complaint does not contend that the defendants imposed any restrictions upon the plaintiffs' liberty after that point or after any arraignment or preliminary hearing. The only seizure alleged is the plaintiff's arrest and that occurred prior to the initiation of any criminal proceedings. . . . Our Plaintiff was not arrested, and he did not have to post bail, communicate with pre-trial services, and he had no travel or geographic restraints placed on him. We find no Fourth Amendment seizure of Plaintiff as a result of the charges filed against him.

Penberth v. Krajnak, 2008 WL 509174, at *17–18 (M.D. Pa. Feb. 21, 2008), *aff'd*, 347 F. App'x 827 (3d Cir. 2009). See Lopez v. Maczko, 2007 WL 2461709, at *3 (E.D. Pa. Aug. 16, 2007) ("[t]he only seizure alleged is the plaintiff's arrest and that occurred *prior* to the initiation of any criminal proceedings") (emphasis in original). As previously discussed, Plaintiffs in this case have not alleged that Defendants, or anyone else, imposed any restrictions on their liberty after the criminal proceedings were initiated. The absence of any liberty restriction coupled with the fact that there was probable cause for Plaintiffs' arrests and the notable absence of any facts to suggest that Defendants themselves initiated the actual criminal proceedings at issue here, Plaintiffs' claim for malicious prosecution is properly dismissed.

### C. Claims Against the Borough

Defendants also ask that Plaintiffs' false arrest and malicious prosecution claims brought against the Borough should be dismissed because Plaintiff has failed to state a claim against Myers in the first instance and because Plaintiff has nevertheless failed to plead facts from which municipal liability can be inferred. The Court agrees.

Indeed, having found that Plaintiff has failed to plead facts from which it can be inferred that Myers is liable for false arrest or malicious prosecution, it follows that the Borough cannot be held liable either.  Hill v. Borough of Kutztown, 455 F.3d 225, 245 (3d Cir. 2006).  See Grazier ex rel. White v. City of Phila., 328 F.3d 120, 124 (3d Cir. 2003), *quoting* City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986) ("[t]here cannot be an 'award of damages against a municipal corporation based on the actions of one of its officers when in fact . . . the officer inflicted no constitutional harm'").

Furthermore, it is well settled that settled that a municipality may not be held liable under Section 1983 based on a theory of *respondeat superior* or merely because its employees may have acted unconstitutionally.  Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).  Rather, a municipality may only be found liable for their own illegal acts or where the plaintiff is able to identify a municipal "policy" or "custom" that caused the constitutional violation.  Bd. of Cty. Comm'rs of Bryan Cnty. v. Brown, 520 U.S. 397, 403 (1997).

> [a] government policy or custom can be established in two ways. Policy is made when a "decisionmaker possess[ing] final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 . . . (1986).  A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well settled" as to virtually constitute law. *Monell*, 436 U.S. at 690. . . .

Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990).  See McTernan v. City of York, 564 F.3d 636, 657-58 (3d Cir. 2009).  Under either scenario, it is incumbent upon a plaintiff to show that a policymaker is responsible either for the policy or, through acquiescence, for the custom.  Andrews v. City of Philadelphia, 895 F.2d at 1480.  See Natale v. Camden Cty. Corr. Facility, 318 F.3d 575, 583–84 (3d Cir. 2003).

Here, Plaintiffs have not identified any custom or policy pursuant to which Myers or any other Borough employee was acting and thus has failed to state a claim against the Borough. Indeed, Plaintiffs appears to suggest that merely because they have sued Defendant Myers in his official capacity that any actions taken by him are necessarily to implement Borough customs or policies. This is simply not the law and Defendants' Motion in this regard will be granted.

## IV.    CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is properly granted.[4]

Accordingly, the following Order is entered:

### ORDER

AND NOW, this 3rd day of February, 2017, upon consideration Defendants' Motion to Dismiss, ECF No. 3, Plaintiffs' Response to the Motion to Dismiss, ECF No. 8 and Defendants' Reply, IT IS HEREBY ORDERED that Defendants' Motion to Dismiss is granted. IT IS FURTHER ORDERED that the Clerk of Court is to mark the case closed.

---

[4] Although the United States Court of Appeals for the Third Circuit has held that when dismissing a civil rights case for failure to state a claim, a court must give the plaintiff an opportunity to amend the complaint whether or not the plaintiff has asked to do so, the Court is not required to allow an amended complaint to be filed where it would be inequitable or futile. See Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007), *citing* Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004). Here, given the clear existence of probable cause to arrest Plaintiffs for the crimes charged, it does not appear that there are any facts that Plaintiffs could allege that would give rise to plausible claim for false arrest or malicious prosecution under the Fourth Amendment. Hence, allowing Plaintiffs to file an Amended Complaint would be futile and the Court declines to do so.

IT IS FURTHER ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if the Plaintiff wishes to appeal from this Order he or she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219].

BY THE COURT:


/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE


cc:     All counsel of record via CM/ECF